[No. 24532. Department Two. August 24, 1933.]

LOUISE S. O'BRIEN, *Respondent*, v. WILLIAM H. TURNER et al., *Defendants*, WILLAPA LUMBER COMPANY, *Appellant*.[1]

[1]Reported in 24 P. (2d) 641.

*Welsh & Welsh,* for appellant.

*Fred M. Bond* and *Guy E. Kelly,* for respondent.

BEALS, C. J.—Plaintiff, Louise S. O'Brien (formerly Louise Shoemaker), instituted this action against William H. Turner and Elizabeth Turner, his wife, and Willapa Lumber Company, a corporation, upon a promissory note dated October 1, 1923, whereby defendant William H. Turner promised to pay, on or before one year after date, to the order of defendant Willapa Lumber Company, the sum of $15,800, with interest at the rate of eight per cent per annum. The note was delivered to plaintiff with the following indorsement:

"Portland, Oregon, Oct. 1, 1923.

"For value received we hereby guarantee the payment of the within note, consent to any extension of time granted the maker, and waive protest, demand

and notice of non-payment thereof, and in case suit or action is instituted upon this guaranty for the collection of the within note we promise to pay such sum as the court may adjudge reasonable as attorney's fees in such suit or action.

"WILLAPA LUMBER COMPANY,
"Per Ralph H. Burnside,
"President."

The note mentions the fact that there were deposited therewith, as security for its payment, two hundred shares of the common stock of defendant Willapa Lumber Company.

Defendants Turner apparently admitted liability upon the note, and did not appeal from the judgment rendered against them. The lumber company by its answer admitted the execution and delivery of the note sued upon and the indorsement and delivery thereof to plaintiff, but denied that the note was based upon any consideration passing from the answering defendant to defendant Turner. It also denied that it had made any payments upon the promissory note, and pleaded the statute of limitations. This defendant also pleaded its corporate existence, its lack of authority to purchase or deal in its own capital stock or to become an accommodation maker or surety upon a promissory note, and that the indorsement and guaranty of the note sued upon in plaintiff's favor, in so far as the lumber company was concerned, was without consideration, *ultra vires* and void, and that the officer purporting to make the same had no authority to obligate appellant. By her reply, plaintiff denied the affirmative allegations of the lumber company's answer.

The action was tried to a jury, which returned a verdict in plaintiff's favor. From a judgment entered against it upon this verdict, Willapa Lumber Company appeals.

Appellant assigns error upon the overruling of its motion for a directed verdict, upon the submission of the case to the jury, upon the denial by the trial court of appellant's motion for judgment in its favor notwithstanding the verdict or in the alternative for a new trial, and upon the entry of judgment in respondent's favor. Appellant also contends that the trial court erred in giving two instructions.

■ Appellant contends that, as against it, the note sued upon is barred by the statute of limitations. On this phase of the case, the trial court instructed the jury that, if appellant made no payment on the note within six years, the note was barred as against appellant. The court also instructed the jury that, to toll the statute, a payment must be voluntary and intentional.

Appellant contends that, while payments within the six-year period were made to respondent by appellant's checks, such payments were in fact made by defendant Turner, who was in appellant's employ; that the amounts of the payments were all charged to Mr. Turner; and that it should be held, as matter of law, that appellant made no payments on the note within six years prior to the institution of the action. Defendant Turner was manager of appellant, and most of the checks drawn to respondent's order were signed by him as manager. Some, however, were signed by another officer of appellant.

No error is assigned upon the instructions of the trial court in connection with this phase of the case, and examination of the record convinces us that appellant is not entitled to a ruling, as matter of law, that the note sued upon was as to it barred by the statute of limitations.

■ Appellant next contends that, on the merits, it was entitled to judgment in its favor as matter of

law, and that the trial court erred in denying its several motions presenting this question.

Briefly stated, the facts leading up to the execution of the promissory note herein sued upon were as follows: Appellant is, and for many years has been, a corporation organized under the laws of the state of Washington, and until the spring of 1931 was engaged in the business of operating a sawmill in the city of Raymond. During the year 1913, F. C. Shoemaker, one of the stockholders of appellant, died, and his widow, respondent herein, became the owner of five hundred seventy-nine shares of appellant's capital stock. Prior to Mr. Shoemaker's death, fifty shares of his stock had been pledged to a Mrs. Southwell as collateral to a note signed by Mr. Shoemaker and his brother Harry.

In 1920, respondent, through appellant's president, arranged to sell a portion of her stock to Ralph Angell at approximately ninety-seven dollars per share. One hundred ninety-eight shares of respondent's stock were transferred to Mr. Angell on the books of appellant, as were also the fifty shares held as collateral to the note in favor of Mrs. Southwell. Mr. Angell paid sixty-five hundred dollars in cash (out of which the fifty shares of stock were redeemed), and executed his note for $17,500 covering the balance due. This note was made payable to appellant's order, and was by appellant indorsed to respondent. The two hundred forty-eight shares of stock purchased by Mr. Angell were by him indorsed in blank and delivered to respondent as collateral.

Appellant contends that Mr. Angell's note was made payable to the order of appellant and by it indorsed to respondent for the purpose of making appellant liable thereon for the purpose of giving respondent additional security, the parties all understanding that ap-

pellant could not legally become an accommodation maker or indorser of the note.

Mr. Angell being unable to pay his note at maturity, appellant's president arranged with certain of appellant's employees to purchase the stock. Defendant William H. Turner purchased two hundred shares thereof at slightly over the par value of one hundred dollars per share, paying Mr. Angell forty-eight hundred dollars in cash and executing to appellant the promissory note here sued upon. The remaining forty-eight shares were sold to another party.

Appellant argues that it did not profit in any manner by the transaction, and that its obligation was assumed without consideration; that respondent did not suffer any detriment by appellant's acts, and that appellant's participation in the deal in the manner above described was *ultra vires*, and that appellant is not in law bound thereby.

It is, of course, true that, under Art. XII, § 6, of the state constitution, a corporation may not obligate itself save for actual value received. *Hoffman v. Gottstein Investment Co.*, 101 Wash. 428, 172 Pac. 573; *Farmers Market v. Austin*, 118 Wash. 103, 203 Pac. 42.

The rule applicable to this case is stated in 7 Fletcher Cyclopedia Corporations (Permanent Edition), p. 706, § 3568, as follows:

"A corporation has no power to issue, accept or indorse a negotiable instrument for the mere accommodation of another; but it cannot set up its want of power as against a *bona fide* purchaser for value before maturity, who takes the note or acceptance in ignorance of the fact that it is merely accommodation paper. It may do so, however, as against a party taking with notice of the *ultra vires* character of the instrument, except in so far as otherwise provided by the clause in the Negotiable Instruments Law that an accommodation party is liable to a holder for value, even though such holder knew at the time of taking the

instrument that the party was only an accommodation party.

"In applying these rules, however, it must be remembered that notice may be constructive as well as actual, in determining whether the holder of negotiable paper is a *bona fide* holder for value, or, as the Negotiable Instruments Law puts it, a 'holder in due course.' Thus, the fact that the maker of a note procures it to be discounted for his own benefit, if unexplained, is notice to the discounter that a corporation's indorsement thereon is not in the usual course of business, but is for the accommodation of the maker. So where a note is taken from the payee, in payment of a debt due from him, indorsed by a third person, the indorsement is *prima facie* an accommodation indorsement, and the person who takes it is chargeable with notice that the indorsement is an accommodation indorsement. So where the acceptor of a draft presents it for discount, it is notice that the corporation drawer or indorser is an accommodation party.

"*Ultra vires* has been held no defense to an action on an accommodation note where there are no corporate creditors and all the stockholders consented to the execution of the note."

The rule is stated in 14A C. J. 732, Title, Corporations, § 2781, as follows:

"In the absence of express statutory authorization, a corporation has no implied power to lend its credit to another by issuing or indorsing bills or notes for his accommodation, where the transaction is not related to the business activity authorized by its charter as a necessary or usual incident thereto, and such a prohibition is contained within an express statutory provision that no corporation shall employ its assets for any purpose other than to accomplish the objects of its creation and shall not create any indebtedness except for money paid or labor done or for property actually received. And not having the power itself, a corporation cannot authorize its officers to bind it by making or indorsing such paper. This rule is universal as to banking and insurance companies, building and loan associations, municipal corporations, rail-

road and plank road companies, and manufacturing and trading companies.''

The question of appellant's liability on the note was submitted to the jury under instructions to which (save two) no objections are here presented, and the jury by its verdict found against appellant upon the issues submitted.

Respondent contended *inter alia* that she was a holder of the note in due course, and that appellant was estopped to plead *ultra vires* or any other defense to her note. It is, of course, true that, before appellant can prevail upon that phase of its argument which is now under discussion, it must appear from the record that this court should hold that, as matter of law, respondent is not entitled to recover.

Appellant pleaded want of consideration for the note, and, the obligation being a negotiable instrument, the burden of proof upon this issue rested upon appellant. *West & Wheeler v. Longtin,* 118 Wash. 575, 204 Pac. 183; *Gleason v. Brown,* 129 Wash. 196, 224 Pac. 930; *Morisse v. Salvesen,* 165 Wash. 157, 4 P. (2d) 852.

Examination of the record convinces us that, upon the question of consideration, a question of fact was presented which was properly submitted to the jury, and under the evidence we can not say that the jury was not warranted in finding that appellant had, to some extent, at least, profited or received advantage from the sales of the stock. Certain of appellant's records which bore upon the transaction with Mr. Angell had been destroyed, and the unusual way of handling the different phases of the stock sales, together with some discrepancies in figures and other matters appearing from the record, rendered the question of consideration a proper one for submission to the jury.

There is also some dispute in the testimony as to

respondent's understanding of the different deals. While it is, of course, true that respondent is bound by the law that appellant could not obligate itself merely for her accommodation, some questions of fact were presented which entitled the jury to pass upon the question as to what actually transpired between the parties, and whether or not respondent was a holder in due course.

Appellant also contends that its president had no authority to indorse the note to respondent, but we find in this connection nothing in the record which requires reversal of the judgment appealed from.

Appellant next contends that, as a corporation can not deal in its own stock, the transaction between the parties must be held void, as the net result of the affirmance of the judgment may be that appellant will acquire two hundred shares of its own capital. The general rule contended for by appellant is well established, but certain exceptions thereto have been recognized by this court. *Barto v. Nix*, 15 Wash. 563, 46 Pac. 1033; *Simonds v. Noland*, 142 Wash. 423, 253 Pac. 638.

We are satisfied that, in such a case as this, where the acquisition by a corporation of certain of its own stock is merely incidental to the transaction upon which the corporation is held liable, and it appears that the transfer of such stock was not the primary purpose of the contract, but is merely incidental to the carrying out of the agreement, the contract is not void, but is enforceable.

Appellant assigns error upon the giving of two instructions, in each of which the jury was advised as to the law in connection with the question of respondent's knowledge or lack of knowledge of the circumstances leading up to the execution of the note sued upon. Appellant excepted to these instructions for the

reason that the same were contrary to the evidence, contending that the evidence showed that respondent knew all of the facts with reference to the indorsement of the promissory note. Appellant now contends that the giving of these instructions constituted reversible error, for the reason that the trial court did not take into consideration, in giving the same, the rule that one dealing with a corporation is charged with notice of its powers, and that, if a corporate act is *ultra vires,* no recovery can be based thereon.

By other instructions, the court told the jury that, if the promissory note in question was accommodation paper to respondent or to defendant Turner, and was without consideration in so far as appellant is concerned, and respondent knew these facts, then the verdict of the jury should be in favor of appellant.

No error is assigned upon the failure of the trial court to give any instruction requested by appellant, and we find that none of appellant's exceptions to the two instructions complained of is well taken.

Judgment affirmed.

MAIN, TOLMAN, and STEINERT, JJ., concur.

BLAKE, J. (dissenting)—As I see it, the majority holding not only authorizes but compels appellant to become a purchaser of its own capital stock—something this court has uniformly held a corporation cannot be. *Union Trust Co. v. Amery,* 67 Wash. 1, 120 Pac. 539; *Kom v. Cody Detective Agency,* 76 Wash. 540, 136 Pac. 1155, 50 L. R. A. (N. S.) 1073; *Duddy-Robinson Co. v. Taylor,* 137 Wash. 304, 242 Pac. 21.